Good morning and may it please the court. My name is Lindsay Lean Rinholen. I am a certified law student representative here today on behalf of the plaintiff appellant Chet Wilson. Cutting, excuse me, so we, could you please introduce your supervisor and attorney? Greg Sisk. Thank you. My co-counsel here, Colin Seaborg, and I plan to divide our time equally five minutes apiece, so while I will pay attention, I do plan to turn it over to him after five minutes. Okay. Cutting right to the chase, a logical first question might be to ask, why are we here today? Given that the state of Oregon has conceded that the district court erred in some way and that our arguments are at least somewhat correct, why are we taking the court's valuable time today with all your pro bono, so you get to take our time, that's part of it. You might not be here if that isn't your pro bono. Indeed. We thought it fair to give you the opportunity to present it to us. It's time well spent for us. Thank you, Your Honors. We view our purpose for being here today because Chet Wilson did everything right in challenging his wrongful re-confinement, but because this area of law is so complex, the intersection of a section 1983 claim and the federal habeas statute, Mr. Wilson's lawsuit was dismissed at a screening stage. We therefore ask this court to set the legal framework for the remand on the statute of limitations. We focus on two key points, points of law directly presented by this appeal. First, as a matter of law, the so-called heck bar on Mr. Wilson's challenge to his wrongful re-confinement could not be lifted until a final disposition on the disciplinary charges for the alleged misconduct. So your best case is Rosales-Martinez v. Rosales-Martinez is directly on point here, though in Rosales-Martinez, he was challenging the conviction itself, and Mr. Wilson is alleging that his return to confinement was in violation of his rights. That is directly on point, and after briefing this issue, it's apparent that heck should apply here. Mr. Wilson is directly alleging that his confinement was unlawful, but moreover, we argue that as a matter of law, Mr. Wilson's 1983 claim could not become cognizable until a final hearing on the misconduct charges, which did not occur until December 2010. So the second disciplinary hearing, you're saying that the time began to run after the second disciplinary hearing? Yes, although heck is not clear on that, there was a favorable termination. We argue that the second disciplinary was a favorable termination within the meaning of heck. However, he was not actually released from prison on that date, and that was sometime thereafter. So for those intervening days, while federal habeas relief under the doctrine of heck would have been available, at least in November 2012. So I thought what you were contending is that Wilson's 1983 claim did not occur until he was released from confinement. Respectfully, either way, if it was the December 2010 hearing or his release a few days later, his complaint was still timely filed in November 2000. Under either scenario? Under either reading of heck versus Humphrey, whether it be the favorable termination itself with that second disciplinary hearing, or whether it be his physical release from custody, his complaint was filed within two years. And if it had been filed, say, between when do you think the date that we pick? Is it when he was released? Or is it the other date? I mean, even though you went either way, what's the right? What's the right legal analysis? My reading of heck versus Humphrey indicates that while someone is in custody, federal habeas remains an exclusive remedy. And until a person, until federal habeas is no longer available, heck bars the 1983 claim from arising. So it would be when he's released under your view? Yes, physically released from custody, which would be later than the second disciplinary hearing. But moreover, as a matter of law, because he was required to exhaust state remedies, including state administrative remedies, like the misconduct hearing, as a matter of law, it could not have happened prior to that second hearing in December 2010. And unless your honors have any more questions for me, I would like to turn it over to Colin Seaborg, who will discuss the issue of favorable termination. Thank you. Good morning, your honors. Good morning. May it please the court. My name is Colin Seaborg, and I'm also a certified law student representative. Mr. Wilson's claim for damages became cognizable upon his release from prison in December 2010 for two reasons. First, the second disciplinary hearing in which the charges of misconduct were dismissed was a favorable termination, which satisfied heck. But why wouldn't the statute of limitations begin to point, then, if the favorable termination is what removed the heck bar? Your honor, as my co-counsel explained, heck could go either way. And under either reading, Mr. Wilson's claim would be timely. However, we think the release is the more appropriate legal answer to that question because the issue or the concern motivating the Supreme Court in heck was that federal habeas relief is the exclusive remedy. And so until that is unavailable, the prisoner must pursue that route as opposed to the claim for damages under the Civil Rights Act. And so once the prisoner is released, that is the point at which his claim would be cognizable, although he must also obtain a favorable ruling on the invalidity of his termination. Yeah. So if he received a favorable ruling but was not released from prison, for five years, is it your view, then, that the statute is told for that entire five years and it was only after he's released from prison that he could pursue an action? So, your honor, in that scenario, the prisoner would then be required to continue pursuing federal habeas relief. And once that had occurred and once there was a favorable ruling under the federal habeas avenue, then once that had occurred, that would be when his, you know, the 1983 claim for damages would become cognizable. If he does not pursue federal habeas relief when he could, he might wind up heck barred anyway, mightn't he? Correct, your honor. And this court has... Because he can't avoid it by not bothering. Correct, your honor. This court has already addressed those issues in Nonet v. Gates. Nonet held that when federal habeas relief is unavailable due to mootness, a 1983 claim for damages may be maintained. But then Guerrero clarified later that that was not true if the prisoner had the federal habeas relief was unavailable simply due to their failure to pursue timely habeas remedies. And so that is the second point here. The alternative reason for that Mr. Wilson's claim for damages became cognizable upon his release was that even if the second disciplinary hearing which the, where the misconduct charges were dismissed, was not a favorable termination, his release from prison falls under this court's ruling in Nonet and once federal habeas relief was mooted and unavailable, he could pursue his 1983 claim for damages. Why wouldn't that be a favorable termination? Could you... The outcome of the second disciplinary hearing, why would that not be a favorable termination? Your honor, we don't see that there would be any reason because the federal habeas act requires that the prisoner exhaust state administrative and judicial remedies and the Oregon regulations require that there be a finding of violation or misconduct before the transitional leave can be revoked. And so that was a necessary step before Mr. Wilson could have been returned to prison. And because he was successful on that, at that point, he was not required to continue on to federal habeas relief. So that was a favorable termination, wasn't it? Correct, your honor. But even if it wasn't, Nonet would cover Mr. Wilson's situation because once he was released, then federal habeas relief was moot and Nonet would say that he could continue with his 1983 claim for damages. And there's no issue based on the allegations in the complaint and the prison documents that were submitted with the complaint concerning whether Mr. Wilson diligently challenged his return to confinement. The prison's own documents that Mr. Wilson submitted make clear that he was in regular communication with the prison officials over the summer of 2010 to face the charges of misconduct. The first hearing, those charges were dismissed with leave to amend and he continued to challenge his continued confinement throughout the fall of 2010 until the second disciplinary hearing in which the charges were again dismissed. And after he had filed a state or mailed a state habeas petition to the Oregon Solicitor General, he was then released by December 15th, 2010. And because he filed his claim within two years of that point, his claim was timely and this court should reverse. All right, thank you. If the court has any further questions. Thank you so much. Thank you. Once again, on behalf of the court, we would like to thank the University of St. Thomas School of Law Appellate Clinic, the lawyers, student lawyers, and the supervising attorney for appearing here pro bono on behalf of Mr. Wilson. The case as argued is submitted for decision by the court.
judges: Fernandez, Rawlinson, Callahan